UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
THOMAS GESUALDI, et al.,

                        Plaintiffs,

- against -

GENERAL CONCRETE, INC.,

                        Defendant.
----------------------------------------------------------------x

NOT FOR PUBLICATION
MEMORANDUM & ORDER
11-CV-01866 (CBA)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 2 2 2013 ★
BROOKLYN OFFICE

AMON, Chief United States District Judge.

Plaintiffs Thomas Gesualdi and Frank Finkel (the "Trustees"), as trustees of the Local 282 of the International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training, and Vacation and Sick Leave Trust Funds (the "Funds"), initiated this action on April 15, 2011 against GCI pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132, 1145, and the Restated Agreement and Declaration of Trust (the "Trust Agreement"). The Trustees allege that GCI failed to make timely required contributions to the Funds and seek an order requiring GCI to submit all outstanding remittance reports and an award of damages for unpaid contributions, interest, liquidated damages, attorneys' fees, and costs. On September 7, 2011, the Trustees moved for entry of default and a default judgment. (DE #6, #8.) Default was entered against GCI on September 8, 2011 (DE #9), and on February 2, 2012, this Court referred the matter to Magistrate Judge James Orenstein for report and recommendation.

On February 1, 2013, Magistrate Judge Orenstein issued a Report and Recommendation (R&R) recommending that the Court enter judgment against GCI in the total amount of $17,414.63; consisting of $6,628.58 in unpaid contributions; $2,200.20 in interest; $2,164.61 in liquidated damages; $5,980.00 in attorneys' fees and $441.24 in costs. GCI timely filed objections to the R&R's calculation of unpaid contributions, interest, and liquidated damages.

1

(DE #36.) The Trustees timely filed a response to GCI's objections as well as its own objections to the R&R's calculation of attorneys' fees, specifically the R&R's recommended reduction of attorney Julie A. Rivera's hourly rate and 40 percent "across-the-board" reduction of the amount of fees requested by the law firm of Trivella & Forte LLP ("TF"). (DE #37.) Having reviewed de novo those part of the R&R to which the parties have objected, the Court now adopts the R&R in all respects except with respect to Ms. Rivera's hourly rate.

## BACKGROUND

The Court assumes the parties' familiarity with the history of this litigation and incorporates by reference the statement of facts set forth in the R&R.

## STANDARD OF REVIEW

When deciding whether to adopt a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). To accept those portions of the R&R to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." Jarvis v. N. Am. Globex Fund, L.P, 823 F. Supp. 2d 161, 163 (E.D.N.Y. 2011) (internal quotation marks and citation omitted). When specific objections are made, however, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

## DISCUSSION

The Court notes initially that having reviewed all aspects of the R&R to which neither party has objected and finding no clear error, the Court adopts those portions of the R&R in full.

### I. GCI's Objections

GCI claims that the R&R incorrectly calculates the award for unpaid contributions

because it misapplies Trust Agreement Art. IX § 1(e) (the "Penalty Provision"), which sets forth the method for calculating the award for the unpaid contributions at issue here. (GCI Obj. ¶¶ 2-4.) Since the R&R's interest and liquidated damages calculations are based on the amount of unpaid contributions, GCI also asserts that those amounts must be adjusted accordingly.

In rejecting GCI's contention, the Court agrees with the R&R's reading of the Penalty Provision and application of it to calculate the award for the unpaid contributions for March 2011, the month at issue here. As stated in the R &R, because GCI "fail[ed] to submit the required report[]" for March 2011, the Penalty Provision authorizes the Trustees to calculate the unpaid contributions for that month "by reviewing GCI's twelve most recent reports, selecting the one with the largest numbers of reported hours, adding ten percent to that number, and calculating the outstanding contributions on the basis of the resulting number of hours." (Puccio Decl. Ex. A; R&R at 8.) The Penalty Provision calls the month with the largest number of hours reported in the previous twelve reports the "base month." Based on a review of the relevant twelve most recent reports, the R&R properly determined that July 2010, reporting 201 hours, was the base month and used that month for its calculations. (R&R at 9.)

GCI misreads the Penalty Provision in contending that the Court must use the actual number of hours worked in March 2011, as revealed in an October 2011 audit, plus 10 percent to calculate the damages owed (GCI Obj. ¶¶ 2-4). Based on the Court's reading of the language on which GCI relies, an audit is relevant only where it "disclos[es] unreported hours for the base month," not the unpaid month.[1] In such cases, the Court uses the base month's audited hours (the reported plus unreported hours) "plus 10 percent therefor . . . to arrive at the total hours." (Penalty Provision.) Any audited amounts for the unpaid month are irrelevant.

---

[1] Although the audit does reflect that GCI over-reported 61 hours for the base month, it has no effect on the calculations for unpaid contributions because, under the Penalty Provision, only "an audit disclosing unreported hours for the base month" requires adjustment of the amount owed.

3

The Court therefore adopts the R&R's correct calculation of the award for unpaid contributions of $6,628.58 based on the 201 reported hours for the base month of July 2010. Because GCI's objections to the amounts of interest and liquidated damages are simply recalculations of those values based on what it purports to be the correct unpaid contribution amount, the Court likewise rejects those recalculations. Since there are otherwise no objections to and no clear error on the face of the R&R's calculations for these amounts, the Court also adopts the R&R's award s of $2,200.20 in interest and $2,164.61 in liquidated damages.

## II. The Trustees' Objections

The Trustees object to the R&R's reduction of their requested attorneys' fees, specifically (1) the R&R's across-the-board reduction of hours billed, and (2) the R&R's downward adjustment of Ms. Rivera's hourly rate.

### A. Across-the-Board Reduction of Hours Billed

The Trustees argue that the R&R's recommendation of a forty (40) percent across-the-board reduction in the number of hours billed by TF "is unwarranted in light of the substantive efforts made by TF to resolve this matter, as well as other matters between the parties, in order to avoid further judicial involvement."[2] (Pls.' Obj. ¶ 7.) In rejecting this contention, the Court agrees with the analysis set forth in the R&R.

As the R&R explains, although the late appearance of GCI in this action justifies the Trustees' request for more hours than the average ERISA case, portions of TF's request are nevertheless "excessive, redundant, or otherwise unnecessary." (R&R at 17-18.) Not only are there instances where TF duplicated efforts of previous counsel, but the amount of time charged

---

[2] To the extent the Trustees maintain that they have fully complied with their obligation to provide adequate documentation for their hour expenditures (Pls. Obj. ¶ 8), the Court notes that any such objection is unnecessary. Indeed, the R&R found the documentation to be sufficient (R&R at 17), and based its recommended across-the-board reduction on the number of hours expended, which it found to be unjustified and unreasonable.

4

for certain tasks also "appear[s] greater than reasonably necessary," due largely to the "practice of billing related tasks performed on the same day by a single individual separately, using the minimum billing increment of .1 hours, rather than billing the tasks together in a single entry." (R&R at 17-18.)

As the R&R points out, in declining to award fees for such "excessive, redundant or otherwise unnecessary hours," the Court need not make a "painstaking review of each time entry" but may "impose an 'across the board percentage' cut of the total amount of time claimed." (R&R at 18.) See also Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir.1994) (finding that court need not "set forth item-by-item findings concerning what may be countless objections to individual billing items"); Daiwa Special Asset Corp. v. Desnick, No. 00 CV 3856, 2002 WL 31767817, at *5 (S.D.N.Y. Dec. 3, 2002). Here, over 150 entries, approximately 34% of the total hours billed, are billed at the minimum increment of .1 hours. (See R& R 18 n.4.) A large number of these entries contain separated tasks—many of which likely took less than .1 hours to complete—performed in the same day by the same individual. In light of the numerous entries documenting excessive or duplicative time, the Court adopts the recommended forty (40) percent across-the-board reduction in the total amount of time claimed.

**A. Reduction of Hourly Rate**

The Trustees also object to the recommended downward adjustment of TF attorney Julie A. Rivera's hourly rate, submitting here for the first time the requisite information for determining the reasonableness of her requested rate of $250. Although this Court finds troubling Ms. Rivera's failure to provide this information in the first instance, it nevertheless modifies the fee award to reflect a $250 hourly rate for Ms. Rivera.

5

In its initial application for fees before Magistrate Judge Orenstein, TF failed to provide any information regarding the experience and qualifications of the attorneys for whom fees are requested. (R&R at 14.) Although Magistrate Judge Orenstein attempted to compensate for this lack of adequate documentation by ascertaining the information for each attorney on his own, he was unable to locate Ms. Rivera's information. (Id. at 15.) He thus appropriately recommended that she receive an hourly rate of $125 based upon the only fact provided to him: that Ms. Rivera was an attorney.

TF has since provided, albeit late, the information needed to accurately assess the reasonable hourly rate for Ms. Rivera. First, TF states that Ms. Rivera's qualifications were unable to be located in the New York State Unified Court System's records because she was recently married in 2012 and changed her name to Julie A. Ortiz (hereinafter referred to as Ms. Ortiz). (Pls.' Obj. ¶ 6.) TF states further that Ms. Ortiz is a 2004 graduate of City University School of Law[3] and has been practicing labor and employment law since 2006.

Based on these qualifications, the Court agrees that for Ms. Ortiz, a $250 hourly rate is appropriate. First, the Court observes that the R&R recommends the same rate for Joshua Ellison, an attorney who graduated from law school the same year as Ms. Ortiz but who has been practicing labor and employment law only since 2009. (Id.) The Court notes in addition that another court in this district recently awarded fees to Ms. Ortiz, then Ms. Rivera, based on an hourly rate of $250. See Gesualdi v. Magnolia Pro Trucking, Inc., No. CV 11-4082, 2012 WL 4036119, at *9 (E.D.N.Y. Aug. 20, 2012).

The Court reminds plaintiffs' counsel that a party seeking attorneys' fees bears the burden of providing adequate documentation, including counsels' qualifications and amount of experience. See Bobrow Palumbo Sales, Inc., 549 F. Supp. 2d at 281. Nevertheless, the Court

---

[3] This Court assumes the Trustees meant the City University of New York (CUNY) School of Law.

6

modifies the R&R's award of fees to reflect an hourly rate of $250 for Ms. Ortiz. Based on this modified rate, the Court calculates the adjusted fee for her work to be $1,020, with the total reimbursement for all attorneys' fees to be $6,490.00.

## CONCLUSION

For the reasons set forth above, the Court adopts the R&R in all respects except as to the hourly rate for Ms. Rivera/Ortiz. Accordingly, the Trustees' motion for default judgment is granted, and the Clerk of Court is directed to enter judgment in the amount of $17,924.63, consisting of $6,628.58 in unpaid contributions, $2,200.20 in interest, $2,164.61 in liquidated damages, $6,490.00 in attorneys' fees, and $441.24 in costs. GCI, furthermore, is ordered to submit all outstanding remittance reports to the Trustees within thirty (30) days of the date of this Order. The Clerk of Court is directed to then close the case.

SO ORDERED.

Dated: Brooklyn, New York
       March 21, 2013

Carol Bagley Amon
Chief United States District Judge